NELSON JOHNSON *v.* CHARLES DOUBLEDAY.

Special Term at Rutland, November, 1917.

Present:   WATSON, C. J., HASELTON, POWERS, TAYLOR, and MILES, JJ.

Opinion filed February 12, 1918.

*Evidence—Remoteness—Discretion of Court—Motion for Directed Verdict—Master and Servant—Safe Place Doctrine. —Jury Question—Duty of Master to Inspect—Reliance by Servant — Negligence — Contributory Negligence—"Variance"—"In and About"—Motion to Set Aside.*

The question of the remoteness of offered evidence is, ordinarily, one addressed to the discretion of the trial court, but this discretion is a judicial discretion and must be exercised in such a way as to make the result harmonize with the true spirit of the law.

Evidence that the penstock at defendant's mill was leaking a year previous to the accident to plaintiff was properly excluded by the trial court, in its discretion, as being too remote to have any tendency to prove that it was in that condition at the time of the accident.

On reviewing a motion for a directed verdict, the Court will take as established all that the plaintiff's evidence fairly and reasonably tended to show.

Plaintiff was employed by defendant to oil the machinery in the latter's mill, but was not instructed as to the location of the places to be oiled. Thinking he smelled a hot box, he attempted to find the heated bearing, and in doing so went to a place where there was in fact no machinery to see if there was anything there that needed oil. While there, the floor gave way, and he suffered the injuries complained of. *Held*, it was plaintiff's duty, under the circumstances, to make reasonable search for the bearings to be oiled, and if he acted reasonably in going where he did, he was, in the eye of the law, within the line of duty.

Wherever a servant may, by the requirements of his engagement, reasonably be expected to go, is a part of his working place to which the safeplace doctrine applies.

In an action of tort by a servant against his master to recover for personal injuries, the question whether or not the servant, at the time of the accident, was where he might reasonably be ex-

pected to go by the requirements of his engagement, was for the jury.

The duty of inspecting the floor of a mill is upon the proprietor thereof, and a servant in his employ has a right, nothing to the contrary appearing, to assume that this duty has been performed.

Where the evidence is not all one way, the questions of negligence and contributory negligence are for the jury.

The term "variance" in its legal sense means material difference.

Under a declaration, charging that defendant failed to provide plaintiff a safe place in which to work, in that the floor was insufficient to sustain him as he passed over it in and about his duty of oiling certain machinery, proof that plaintiff, at the time of the accident, was looking for the machinery, with the location of which he was not familiar, for the purpose of oiling it, did not constitute a variance, because he was doing something which was incidental to his duties and fairly within the terms "in and about" that work, and any inaccuracy of other allegations in regard to what he was doing were immaterial.

A motion to set aside a verdict is addressed to the discretion of the trial court, and where it does not appear that this discretion was withheld or abused, the ruling will not be revised.

TORT FOR NEGLIGENCE. Plea, the general issue. Trial by jury at the September Term, 1916, Rutland County, *Butler,* J., presiding. Verdict for plaintiff. Defendant excepted. The opinion states the case.

*Marvelle C. Webber* and *J. P. Leamy* for defendant.

*Lawrence, Lawrence & Stafford* and *Asa S. Bloomer* for plaintiff.

At the time of receiving his injuries, plaintiff was acting in the line of his duty. *Baker* v. *Duwarnish,* 43 Wash. 149, 86 Pac. 167; *Hefferin* v. *The Illinois,* 63 Fed. 161; *Harty* v. *The Hartford Faience Co.,* 97 Atl. 1020; 4 Thompson on Negligence, sec. 3749; *Upton* v. *Bartlett et al.,* 13 N. Y. S. 451; *T. H. & I. R. R. Co.* v. *Fowler,* 48 L. R. A. 531; *Stone* v. *Boscawen Mills,* 71 N. H. 288, 52 Atl. 119.

POWERS, J. The plaintiff was injured in the defendant's mill and brings suit to recover damages therefor. He had judgment below and the defendant brings the case here on exceptions.

There was evidence which, viewed in the light most favorable to the plaintiff, fairly and reasonably tended to show the following facts:   The plaintiff hired out to the defendant, and among other things engaged to work a part of the time in his mill.   As a part of his duties when at work in the mill, the plaintiff was to oil the boxes of machinery.   He was soon put to work in the mill assisting Fred Doubleday, the defendant's son, who had immediate charge of that enterprise.   During the second day, he was at work in the millyard, and had occasion to go and did go into the mill on an errand of his own.   When he entered the mill, he thought he detected the odor of a hot box.   He took an oil can and proceeded to look for the trouble.   He went down into the wheel pit and examined and oiled the bearings there; he came back up into the basement where some of the machinery was, and noticing what appeared to be a shaft on or near the floor, near the far end of which was a hole in the floor, stepped over to that point to see if there was anything there that needed oil or attention.   When he did so, the floor broke beneath him and in his fall he suffered the injuries here complained of.   He had never been told where to find the different oiling places, and there was, in fact, nothing to oil in the place where he was injured or within about seventeen feet thereof.   The shaft above referred to was not in use and the hole in the floor near the end had no relation to the machinery, though some of the oiling was done through holes in the floor.

The plaintiff testified that the machinery was running when he went down into the wheel pit, and to meet and contradict this, the defendant gave evidence tending to show that the plaintiff's clothing was dry when he returned to the yard, and that it was impossible, owing to the leaking condition of the penstock, to go down into the pit when the machinery was running without getting wet.   The defendant then offered to show by one Ira Wescott that a year previous to the time of the accident the condition of the penstock in this respect was such that one could not go down there without getting wet.   This was excluded as being immaterial and too remote.

As the case stood, we cannot say that this evidence was immaterial.   On that ground alone, the ruling could not be sustained.   But if the court was justified in holding that the evidence was too remote, its exclusion was without error.

The question of remoteness is, ordinarily, one addressed to

the discretion of the trial court. *Niles* v. *C. V. Ry. Co.*, 87 Vt. 356, 89 Atl. 629. This discretion is, of course, a judicial discretion, and must be exercised in such a way as to make the result harmonize with the true spirit of the law. And while cases might easily be cited where it would be properly reviewable, we do not think the case in hand, especially in view of the fact that there was no evidence that the condition of the penstock was unchanged, is of that class.

At the close of the evidence, the defendant moved for a verdict and excepted when that motion was overruled. In support of this exception it is urged with much vigor that the defendant cannot be held liable because the plaintiff, at the moment of his injury, was both outside the scope of his employment and outside his working place. To maintain his position the defendant dwells upon that part of the evidence tending to support it. But the evidence of the plaintiff is not to be ignored. Evidently the jury accepted it at its face value. There is nothing for us to do but to take as established all that it fairly and reasonably tended to show. From this evidence, the jury was warranted in inferring that the plaintiff was within the scope of his employment and in his working place.

As we have seen, he was employed to do the oiling. He was not told where the boxes and bearings were, but left to seek them out for himself. In these circumstances, it was as much his duty to make reasonable search for such boxes and bearings as it was to oil them when found. When he stepped into the mill on the occasion in question, he thought he smelled a hot box. He recognized this as a danger signal, and set about finding and correcting the trouble. The fact that he was mistaken and there was no hot box does not as matter of law change his situation. If he acted reasonably, he was in the eye of the law within the line of his duty. Again, when he came up out of the pit and saw the old shaft with the hole near the end of it, if he acted reasonably in looking there for an oiling place, he was still in the line of his duty. It was for the jury to say about this. The same may be said as to his proper working place. The safe place rule does not require a workman to stand in one particular spot all the time to be within its protection. But it extends to all parts of the premises to which his duties reasonably require him to go. Wherever he may, by the requirements of his engagement, reasonably be expected to go, is a part of his work-

ing place within the meaning of the law. Whether or not the plaintiff brought himself within this rule was a jury question.

There was evidence warranting the inference that the plaintiff was in the exercise of due care and that he did not assume the risk. It tended to show that he was going about his work in the usual way. He was not obliged to inspect the floor. That was the defendant's duty. The plaintiff had a right, nothing to the contrary appearing, to assume that this duty had been performed. *Dunbar* v. *C. V. Ry. Co.*, 79 Vt. 474, 65 Atl. 528. True, he saw a hole in the floor. That was one of the things that deceived him. But it was not very light down there and the floor was covered with sawdust and shavings. The character of the insufficiency was such that it would require some special attention to discover it. The evidence was not all one way, and both these questions were for the jury.

It is also urged that there was a variance between the allegations and the proof. But the term "variance" in its legal sense means material difference. *Skinner* v. *Grant*, 12 Vt. 456. The charge in the declaration is that it was the plaintiff's duty under his employment to oil the machinery and fixtures, and that the defendant failed to provide him a safe place in which to do that work, for that the floor in the basement was so old and rotten that it was insufficient to sustain his weight as he passed over it "in and about" his work of oiling. While it is true that he was not in the very act of oiling when the floor collapsed, he was doing something incidental thereto and was fairly within the terms "in and about" that work. Any inaccuracy of the other allegations in regard to what he was doing are immaterial. *Fowlie's Adm'x* v. *McDonald, Cutler & Co.*, 82 Vt. 230, 72 Atl. 989.

The defendant saved an exception to the charge; but the instruction complained of was in full harmony with the views herein expressed, and the exception is without merit.

The motion to set aside the verdict was addressed to the discretion of the trial court, and we find nothing in the record warranting a holding that that discretion was withheld or abused. *Lincoln* v. *C. V. Ry. Co.*, 82 Vt. 187, 72 Atl. 821, 137 Am. St. Rep. 998.

*Judgment affirmed.*